COURTNEY v. OHL.

(Circuit Court of Appeals, Third Circuit.   March 8, 1917.)

No. 2190.

CORPORATIONS ⊜⇒269(3)—ASSESSMENT AGAINST STOCKHOLDERS—EVIDENCE—
FRAUD.

In an action by the trustee of a bankrupt corporation against a stock-
holder to recover an assessment made on his stock subsequent to bank-
ruptcy, evidence *held* insufficient to support the charge that the stock-
holder, who was one of a committee, before he owned any stock in the
corporation, to appraise the property turned over to the corporation
in exchange for its stock, made a valuation in bad faith and with knowl-
edge that it was grossly excessive.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888,
1154–1159, 2277.]

In Error to the District Court of the United States for the Western
District of Pennsylvania; Charles P. Orr, Judge.

Action by Joseph S. Courtney, as trustee in bankruptcy of the es-
tate of the Groveland Mining Company, against Edwin N. Ohl.   Judg-
ment for the defendant on directed verdict, and plaintiff brings er-
ror.   Affirmed.

S. H. Holding and Thompson, Hine & Flory, all of Cleveland, Ohio,
and John D. Evans, of Pittsburgh, Pa., for plaintiff in error.

H. B. McGraw, of Cleveland, Ohio, and J. N. Martin and Norman
A. Martin, both of New Castle, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit
Judges.

BUFFINGTON, Circuit Judge.   In the court below Joseph S. Court-
ney, a citizen of Michigan, trustee in bankruptcy of the Groveland
Mining Company, a corporation of that state, brought suit against
Edwin N. Ohl, a citizen of Pennsylvania, a stockholder in that com-
pany, to recover an assessment made subsequent to bankruptcy, on his
stock.   The cause was tried by a jury, and at the conclusion of the
testimony of both sides the court gave binding instructions for defend-
ant.   Thereupon plaintiff sued out this writ and assigned for error
such action of the court.

The question here involved is therefore:   Did the pleadings and
proofs establish any liability of Ohl to the Groveland Mining Com-
pany, for it is manifest that, unless such liability of Ohl to the com-
pany existed prior to bankruptcy, the company's bankruptcy did not
create any liability.   As it is conceded there was no subscription or
other express contract by which Ohl obligated himself to pay money
to the Groveland Mining Company, it follows that any liability on his
part here sued upon must be an implied contract which the law creates.
Turning to the pleadings, then, for a statement of the implied liability
sued on, we find it set forth on these alleged facts, namely:

"That for a long time prior to and at the date of the adjudication of said
corporation as a bankrupt, its outstanding capital stock was two hundred

thousand dollars ($200,000.00), divided into eight thousand (8,000) shares of twenty-five dollars ($25.00) each. That the original subscribers of the capital stock of said corporation, and the number of shares subscribed for by each, were as follows:

| | |
|---|---|
| George W. Youngs | 2026 shares |
| J. H. Bartow | 2026 shares |
| D. T. Croxton | 2665 shares |
| W. H. Becker | 1280 shares |
| Frank W. Youngs | 3 shares |

"That all of said capital stock was issued for and in consideration of the assignment to said corporation of a certain option. That *prior to the incorporation* and in anticipation thereof, the above-named subscribers and incorporators, together with Edwin N. Ohl and E. D. Carter, *entered into a pretended valuation* of the potential lease mentioned in the option hereinbefore referred to, and pretended to value such potential lease at one hundred ninety thousand five hundred and twenty-five dollars ($190,525.00). That said option transferred to said corporation in payment for said stock was worthless and without value, and that the valuation of one hundred ninety thousand five hundred and twenty-five dollars ($190,525.00) aforesaid, was not made by said incorporators and stockholders honestly and in good faith, but was made with knowledge on the part of said incorporators and stockholders that said valuation was grossly excessive."

Assuming for present purposes that the facts stated would, if proved, establish a liability on the part of Ohl, a study of the proofs shows that no such alleged acts were done or in any way participated in by Ohl.

Without discussing all the proofs, we restrict ourselves to such as are pertinent to the issue between him and the company. The Groveland Mining Company was a corporation formed under the laws of Michigan, with a capital stock of $200,000, divided into 8,000 shares, of $25 each. Its articles of incorporation, filed with the secretary of state on August 3, 1907, recited that no cash was actually paid in on the capital stock, but that contemporaneously with its organization certain property, consisting of an option on certain ore lands, was conveyed to it, and that the value of such option was $190,500. In addition thereto, some $9,500 were expended in putting the ore banks in workable shape. The property, thus acquired by lease, consisted of an iron ore mine which had theretofore been leased and developed by another company at an expense of about $150,000 and was subsequently surrendered by it to the owner. The mine contained a large amount of knocked-down or already mined ore, which could be marketed when the water was pumped from the mine. The mine was operated by the Groveland Company until it went into bankruptcy about six years thereafter. There was conflicting testimony as to the value of the lease, but there is no testimony whatever to show any purpose to defraud any one in making such valuation. The corporation had but a few stockholders. The only attempt to dispose of its stock seems to have been amongst those who were in some may interested in either the marketing or the consumption of its product, and who were fully advised as to what had been done. Thus J. H. Bartow, the promoter of the Groveland Mining Company, and one of the original subscribers of its stock, controlled the Lake Erie Ore Company, of Cleveland, Ohio, which was the exclusive selling agent for the

entire product of the mine during the whole time it was operated, and became also the owner of 2,339 shares of the Groveland stock. So also Ohl, who was a furnace manager, bought some of the ore for plants he was interested in and became the owner of 1,000 shares of the Groveland stock. There is no evidence whatever to connect Ohl in any way with the organization of the company, or the valuation of the lease. He had no dealings of any kind with the company itself concerning this stock. He was told by Bartow, the promoter, that he was forming such a company, and was offered by Bartow stock in it at the price it had cost Bartow. He agreed to buy 1,000 shares of it, and paid Bartow about $1,200 personally as full-paid stock for it. Toward making up this 1,000 shares, Bartow used some of his own and procured some from his associates. Some 760 shares were transferred to Ohl by Bartow from stock issued to the latter and the certificates for the balance of 240 shares were issued direct by the company to Ohl at Bartow's instance. In no way did Ohl have dealings with the company.

Such being the case, it is clear that the allegations of the plaintiff's claim, quoted above, were not sustained by the proofs, and, indeed, the contrary was proven to be the case. It is therefore manifest that no grounds of recovery against Ohl were shown, and the court below committed no error in so instructing the jury.

The view we have taken of the controlling issue of the case renders it needless for us to discuss other questions discussed in the opinion of the court below, and in the brief and arguments in this court.

The judgment below is affirmed.